No. 85-10

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

LLOYD MELAND,

        PLaintiff and Respondent,

   -vs-

INTERMOUNTAIN SYSTEMS, INC., a Mont.
corp., and RUSSELL RAPP,

        Defendants and Appellants.

---

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Stephens Law Firm; Robert L. Stephens, Jr., Billings,
Montana

    For Respondent:

        Robert M. Kampfer, Great Falls, Montana

---

Submitted on Briefs: Oct. 31, 1985

Decided: December 31, 1985

Filed: DEC 31 1985

---
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The respondent, Lloyd Meland, filed a complaint in District Court against the appellant, Intermountain Systems, Inc., and the appellant's sales representative, Russell Rapp, alleging breach of a contract for the sale of goods and fraudulent misrepresentation. Russell Rapp defaulted. A District Court nonjury trial resulted in a finding that the appellant committed no fraud, but did breach the sales contract. The respondent was awarded damages and attorney fees. This appeal followed.

We affirm the award of damages but reverse on the award of attorney fees.

The issue in this case is whether the District Court's conclusions of law are in accord with the Uniform Commercial Code provisions on sales, particularly in the area of acceptance of non-conforming goods and damages therefore.

The respondent, Lloyd Meland, is engaged in wheat farming in the Vaughn area in Cascade County, Montana. He agreed in a written contract to purchase a metal, quonset-type "curvette," building kit from the appellant, Intermountain Systems, Inc., a business located in Billings, Montana, engaged in selling farm buildings. There is some factual dispute as to exactly what the respondent stated that he required as far as building dimensions and the need for a specified height of the completed structure, but the terms of the written sales contract clearly demonstrate that the building was to be 50 feet wide, 60 feet long, and 18 feet high. Beyond the contract terms, which are sufficient in themselves to establish the agreed dimensions, there is

strong indication that the respondent expressed a need for the 18 feet height to accommodate certain machinery storage and the dumping of grain in the building. The contract price was $6,950. The respondent paid $2,000 down and $4,950 on delivery of the component parts.

Under the terms of the agreement the respondent was purchasing the component parts of the building. He had the responsibility of assembling the structure and selecting and laying a foundation for the building. The respondent was aware that his choice of a foundation type could vary the overall building height. There is reference in the record that the respondent chose a trough-type foundation that would lower the overall building height from the specified 18 feet. The record shows that this type foundation lowered the building overall height approximately 8 inches.

Upon receipt of the component parts the respondent began construction. He learned then that the overall height of the completed structure was going to be less than 18 feet. He determined that the building would only be slightly over 15 feet high. The District Court determined that the building as delivered would be 16 feet 5 inches high if completed according to the included instructions. The District Court's calculation is based on measurements from the top rib to the bottom steel which the parties agree is the accepted way to measure such building.

Respondent called the appellant and notified them of the problem. He was informed by the appellant that if the building was constructed according to instructions it would turn out fine. The respondent did not agree and then altered the construction sequence by using panels out of the specified order of assembly to obtain the desired height. He

was later told, after running out of panels, to reassemble the building correctly and he would have enough material. The appellant made no inspection of the construction.

The respondent then ordered additional panels factory-direct from Arch Technology Corporation in Illinois. He also purchased several temporary grain storage facilities because the building would not be completed in time for harvest. The cost of the additional panels and labor and the temporary storage facilities was $4,085.

The respondent then filed suit against the appellant alleging breach of the sales contract and fraud. The District Court at a non-jury trial found no fraud but did find that the appellant had breached the sales contract. It awarded the respondent $4,085 as damages as an amount that the respondent was forced to spend as a result of the appellant's delivery of non-conforming goods. Costs were awarded as were attorney fees in the amount of $500. This appeal followed.

Substantial credible evidence exists to support the District Court's determination that the goods delivered by the appellant to the respondent were non-conforming goods. Under section 30-2-106, MCA, goods are "conforming" when they are in accordance with the obligations under the contract. The component parts of the delivered building kit, if assembled according to the instructions, would have resulted in a completed structure 16 feet 5 inches high. The terms of the written contract between the parties required the building to be 18 feet high at completion. The delivered goods were not "conforming" goods as they were not in accord with the obligations of the contract.

Substantial credible evidence also exists to support a determination that the respondent accepted the goods. The respondent received the goods on July 7, 1981. About ten days later he began assembling the building and discovered the non-conformity. He contacted the appellant to notify them of the problem. He then went ahead with construction and used the component parts in a fashion that would produce a building height that he desired. Section 30-2-606(1)(c), MCA, provides that acceptance of goods occurs when the buyer does any act inconsistent with the seller's ownership. Use of the delivered goods to construct a building was inconsistent with the seller's ownership and constituted acceptance of the goods.

The appellant relies heavily on an argument that once there is acceptance no damages may be had. Acceptance of non-conforming goods does not preclude recovery for damages due. Acceptance precludes rejection of the goods or revocation if made with the knowledge of the non-conformity unless there is a reasonable assumption that the non-conformity may be reasonably cured. Section 30-2-607(2), MCA. Where the buyer has accepted goods and given notification he may recover damages for any non-conformity. Section 30-2-714(1), MCA. The notification required by this section is that contained in section 30-2-607(3), MCA. It requires that the buyer must, within a reasonable time after he discovers any breach, notify the seller. Here the respondent notified the appellant immediately upon discovery of the non-conformity. That is sufficient notice.

The proper award of damages in this case is set forth in statute. Section 30-1-106(1), MCA, provides that remedies under the Uniform Commercial Code shall be liberally

- 5 -

administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in the Uniform Commercial Code or by other rule of law. Section 30-2-714(1), MCA, provides that where a buyer has accepted goods and given notice he may recover damages from the seller's breach as determined in any manner which is reasonable. Section 30-2-714(3), MCA, provides that where accepted goods are in issue, in a proper case incidental and consequential damages may also be recovered. Section 30-2-715, MCA, governs incidental and consequential damages awardable in this case. In relevant part, it defines incidental damages as any commercially reasonable charges or expenses in connection with effecting cover and any other reasonable expense incident to delay or other breach. It defines consequential damages as including any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise.

The District Court awarded the respondent $4,085 in damages as an amount the respondent was forced to expend as a result of the appellant's delivery of non-conforming goods. This amount represents the cost of materials and labor for completing the building and for temporary grain storage facilities necessitated by the harvest and delay in completion of the building.

The appellant argues that these damages are excessive and that there were reasonable alternatives available to the respondent that would have minimized the cost of completing

the structure. There is little merit in the appellant's argument. Respondent informed the appellant of the problem that existed and gave the appellant reasonable notice and the time required to take note of the problem and make an interested effort to remedy it. The appellant however took a rather disinterested approach initially by only expressing its thoughts that everything would be fine if the assembly instructions were followed. No active participation or sincere interest was expressed initially. By the time that the appellant did take the problem seriously it was too late to require the respondent to delay in anticipation of a resolution. The respondent was justified in taking a reasonable approach to remedying the problem. We will not now criticize it simply because there may have been a better approach in the eyes of the appellant. We hold that the damages as awarded are proper under the Uniform Commercial Code and the facts of this case.

The District Court awarded attorney fees to the respondent. No reason was stated. It is the law in Montana that absent statute or contract provisions on attorney fees, with the exception of particular circumstances not relevant here, attorney fees are not allowed as costs or damages. Martin v. Crown Life Insurance Company (Mont. 1983), 658 P.2d 1099, 1104, 40 St.Rep. 216, 221. There is no statute or contract provision here. The attorney fees are not allowable.

Affirmed with the exception of the award of attorney fees. The award of attorney fees is reversed.

_William E. Hunt_
Justice

We Concur:

_John Conway Harrison_

_[signature]_

_John C. Sheehy_

_X. C. Gulbrandson_
Justices